**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cr-00389 |
| v. | ) | |
| | ) | |
| LAWRENCE WALKER, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 15, 2024, a jury convicted defendant Lawrence Walker ("Walker") of one count of knowingly and intentionally distributing a controlled substance, namely a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On June 17, 2024, Walker filed his post-trial motions, moving for judgment of acquittal or, in the alternative, a new trial. Before the Court is Walker's post-trial motions brought pursuant to Federal Rules of Criminal Procedure 29 and 33. For the following reasons, the Court denies Walker's post-trial motions [147].

**BACKGROUND**

During the four-day jury trial, the Government presented evidence that Walker distributed cocaine base to Fredrick Stewart ("Stewart") who, in turn, distributed the cocaine base to Janine Camphor ("Camphor"), a confidential source working with the FBI.

At trial, the Government elicited testimony from witnesses, including Stewart, Camphor, FBI Special Agents Shamar Bailey, Jeremy Bauer, and John Durkacz, and Chicago Police Officer Donta Hayes. Stewart and Chicago Police Officer Donta Hayes ("Officer Hayes") provided eyewitness testimony that Walker distributed the drugs to Stewart. To corroborate the testimony,

the Government also presented evidence, including three intercepted calls between Stewart and Walker, cell site analysis from a cell phone used by Walker ending in "9750" ("Walker's Phone"), and other witness testimony. Specifically, Special Agent Shamar Bailey ("Agent Bailey") and Camphor testified about the specifics of the controlled purchase as outlined in three intercepted calls offered by the Government. Special Agent Jeremy Bauer ("Agent Bauer") also testified about his analysis of the cell-site information that placed Walker's Phone at the scene of the drug exchange at the time of the purchase.

The jury also heard recorded conversations between Stewart and Walker where the controlled purchase was discussed. Stewart provided testimony that interpreted the coded language used during the conversation. Stewart, along with Special Agent John Durkacz ("Agent Durkacz"), provided voice identification testimony that identified Walker's voice in the three intercepted phone calls.

On February 15, 2024, the jury found Walker guilty of the single count in the superseding information.

**DISCUSSSION**

### I.     Motion for Judgment of Acquittal

A defendant seeking a post-trial judgment of acquittal faces an extremely high hurdle. *United States v. Vizcarra-Millan,* 15 F.4th 473, 506 (7th Cir. 2021). This is because when assessing Rule 29 motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace,* 991 F.3d 810, 812 (7th Cir. 2021). In doing so, courts do not re-weigh the evidence or second-guess credibility determinations and make all reasonable inferences in the government's favor. *United States v. Ginsberg,* 971 F.3d 689, 695 (7th Cir. 2020).

Walker moves for judgment of acquittal, arguing that the evidence presented at trial was insufficient for a reasonable jury to return a guilty verdict.  He contends that Stewart's failure to identify Walker in the courtroom, his prior felony convictions, the large amount of drug sales he transacted with approximately 50 people, and his poor memory due to a gunshot wound to the head casts doubts on the believability of his testimony.  Walker also argues that Officer Hayes's in-court identification of Walker is insufficient because he only briefly viewed Walker through the window shield of his vehicle.  Because Officer Hayes had no physical description of Walker prior to this brief interaction and, therefore, had to commit Walker's physical description to memory based in order to identify him at a later date, the identification is not credible.  Walker also argues that the Government's drug trafficking expert witness's testimony that drug dealers never use cars registered to themselves when conducting drug deals provides support that Walker was not involved in the drug deal since the car Walker was allegedly driving was registered to him.  Lastly, Walker contends that the Government failed to establish that the phone number used in the recorded phone calls belonged to Walker.   The Government argues that it presented ample witness testimony and evidence to prove that Walker knowingly and intentionally distributed cocaine base to Stewart beyond a reasonable doubt.

To convict Walker of distribution of cocaine base, the Government must prove beyond a reasonable doubt that defendant (1) knowingly distributed crack cocaine, and (2) knew what he distributed was some kind of a controlled substance.  7th Circ. Pattern Crim. Jury Inst., 21 U.S.C. § 841(a)(1).  Viewing the evidence and all reasonable inferences in the Government's favor, there is abundant evidence that Walker knowingly and intentionally distributed the cocaine base to Stewart.

*A.  Stewart's Testimony*

Walker's argument challenges the credibility of Stewart's testimony at trial.  Walker, however, ignores the corroborating evidence the Government presented at trial that, when viewed in totality

and in the light most favorable to the Government, was sufficient to convict Walker of the charged crime. The corroborating evidence the Government presented at trial includes three intercepted calls between Stewart and Walker, call site analysis from Walker's Phone, and other witness testimony. As it relates to Stewart's testimony about the specifics of the drug transaction, Agent Bailey and Camphor both testified that Camphor set up two transactions with Stewart to purchase 63 grams of crack cocaine for $2,600 on January 2, 2019. The Government also offered three intercepted calls between Stewart and Walker where they discussed the price and amount of crack cocaine. Stewart testified about the coded language on the call and interpreted the coded language that discussed the price and drug amount, which were consistent with Camphor and Agent Bailey's testimony about the specifics of the transactions. Stewart's identification of Walker was also corroborated by Agent Durkacz's voice identification of Walker. The cell-site analysis of Walker's Phone, supported by Agent Bauer's testimony, placed Walker's Phone at Walker's residence before and after January 2, 2019 and at the scene of the drug deal at the time of the transaction. Such corroborating evidence supports Stewart's testimony.

### B. *Officer Hayes's Testimony*

Walker, likewise, challenges the credibility of Officer Hayes' identification of Walker. The corroborating evidence that supports Stewart's testimony, *see supra Section I.A.,* supports Officer Hayes' identification as well.

Additionally, the intercepted calls that placed Walker at the scene of the drug deal during the transaction support Officer Hayes' identification of Walker. Specifically, in one of the intercepted calls, Walker called Stewart and asked where Stewart was located. Stewart responded that he was at Jewel. At the time of the call, cell-site analysis showed Walker's Phone traveling from Walker's residence to Jewel. In another intercepted call, Walker told Stewart that he was parked in front of Freeman Jewelers next to Jewel. Camphor testified that Stewart received this call while he was in

4

her car and the cell-site analysis placed Walker's Phone at Jewel at the time of this call. Camphor testified that Stewart left her car and went into an Audi in front of Freeman Jewelers. Upon return, Camphor testified that Stewart gave her the crack, which Camphor, in turn, gave to the agents. Agent Bailey's testimony that the gross weight of the crack, including the packaging, was approximately 65 grams, supports Officer Hayes's identification testimony as the amount was only two more grams than Walker and Stewart agreed upon.

To the extent Walker requests the Court grant his motion based on the jury's improper credibility determination as it relates to Officer Hayes and Hayes, such request is improper as Rule 29 does not allow the Court to second guess the jury's credibility determinations. *United States v. LeBeau,* 949 F.3d 334, 346 (7th Cir. 2020) (internal citations omitted).

The Court finds that Officer Hayes's identification testimony is proper and supported by the corroborated evidence.

### C.  *Use of Registered Car During Alleged Drug Transaction*

Walker's argument that the use of the Audi, a vehicle registered to Walker, is consistent with the Government's drug trafficking expert's testimony that drug dealers normally do not use cars registered in their name when conducting these transactions. This argument is not persuasive as it fails to consider the other factors cited by the expert, such as use of burner phone, coded language, tinted windows, and the deal occurring in a public place, that support Walker's participation in the transaction. The use of the registered car is therefore inconsequential and not a proper basis for acquittal.

### D.  *Walker's Phone Evidence*

Lastly, Walker argues that the Government failed to establish that Walker's Phone actually belonged to Walker. As discussed, there is ample evidence, through cell-site analysis and Agent Bauer's testimony interpreting the cell-site analysis, that supports a conclusion that Walker's Phone

belonged to Walker based on the location of Walker's Phone prior to, during, and after January 2, 2019.

In viewing the evidence in totality in the light most favorable to the Government, the Court denies Walker's Rule 29 motion for acquittal.

**II.     Motion for New Trial**

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (citations omitted). "The applicable standard under Rule 33 requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (quoting *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman,* 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted). District courts have considerable discretion in determining Rule 33 motions. *Id.* at 716.

*A.  Agent Durkacz's Voice Identification Testimony*

The Government offered Agent Durkacz's testimony to identify Walker on the three intercepted calls that were introduced as evidence at trial. Walker argues that a new trial is warranted because Agent Durkacz's voice identification testimony did not lay sufficient foundation because Agent Durkacz had less than minimal familiarity with Walker's voice. Specifically, Walker contends that minimal familiarity was not achieved because Agent Durkacz did not have a sufficient opportunity to hear Walker's voice during the arrest process because most of his statements were single-word responses. Further, Walker argues that Agent Durkacz had to rely on his memory of Walker's voice during his arrest, which occurred four years prior to trial. Walker contends that the brief encounter and long passage of time undermines Agent Durkacz's memory and Agent

Durkacz's inability to rely on exemplars of Walker's voice during the four-year period makes his testimony unreliable. *Compare United States v. Cruz-Rea,* 626 F.3d 929, 935 (7th Cir. 2010) (finding minimal familiarity where police officer testified that he became familiar with defendant's voice by listening to voice exemplars fifty to sixty times prior to identifying defendant's voice on wiretap telephone conversations). Lastly, Walker alleges that because Agent Durkacz's voice identification is not corroborated by any other witness testimony, his identification is less reliable. The Government contends that Agent Durkacz's voice identification meets the minimal familiarity test and, even without his testimony, the Government provided sufficient evidence for the jury to find that Walker was on the three intercepted calls.

Federal Rule of Evidence 901(b)(5) permits voice identification of an individual's voice whether heard firsthand or through a recording "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). The Seventh Circuit has recognized that a "low bar of familiarity" is required to meet the mandates of this Rule. *United States v. Jones,* 600 F.3d 847, 858 (7th Cir. 2010). Any challenge to the accuracy of voice identification goes to the weight of the evidence and the issue is for the jury to decide. *United States v. Alvarez,* 860 F.3d 801, 809 (7th Cir. 1988) (internal quotations omitted).

The Court finds that Agent Durkacz's voice identification met the minimal familiarity standard. He testified that he spent approximately two hours with Walker on the date of his arrest. During this two-hour period, Agent Durkacz interacted with Walker during Walker's COVID test, conducted a 20-30 minute processing review whereby he asked Walker a plethora of biographical questions, and discussed Walker's dietary restrictions. Agent Durkacz was also present during Walker's initial appearance in court. This interaction is sufficient to establish minimal familiarity. *United States v. Diaz,* 2023 WL 8622051, at *3 (N.D. Ill. Dec. 12, 2023) (Coleman, J.) (minimal familiarity met where officer spent 10 minutes with defendant during which time officer asked

7

defendant biological questions); *United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002) (holding that a witness who heard defendants' voices once during a court proceeding satisfied the "minimal familiarity" requirement); *United States v. Neighbors*, 590 F.3d 485, 493 (7th Cir. 2009) (minimal familiarity requirement satisfied where detective had a 5-10 minute conversation with defendant during post-arrest interview, and heard defendant speak during various court proceedings). Walker's argument that one or two-words answers is not enough to establish minimal familiarity is likewise flawed. Not only does Walker fail to provide any caselaw that concludes that one or two-word answers do not establish minimal familiarity, but Agent Durkacz's testified that during the more than two-hour period he spent with Walker, specifically during the processing interview, Walker provided more than one or two-word answers. Walker's arguments that Agent Durkacz lacked exemplars and the Government's lack of corroborating testimony both support a finding that minimal familiarity is not established are of no import for the same reasons: Walker offers no caselaw supporting such conclusion and Agent Durkacz's in-person interaction establishes minimal familiarity. The Court finds that Agent Durkacz's voice identification met the minimal familiarity standard under Federal Rule of Evidence 901(b)(5) and does not provide a basis for a new trial.

### B. *Government Exhibit 1 and Government Exhibit 2*

Next, Walker argues that the Court erred in admitting both Government's Exhibit 1 and Government's Exhibit 2. Walker contends that the playing of Government Exhibit 1 during Stewart's testimony and again during Agent Durkacz's testimony was cumulative and in violation of Federal Rule of Evidence 403. Walker alleges that playing Government Exhibit 1 twice is needlessly cumulative because the jury had already heard it, it was not important to Agent Durkacz's voice identification testimony, and playing it for a second time ran the risk of leading the jury to believe that more than one transaction occurred. Walker's motion suggests that he also objects to the admission of Government Exhibit 2. It appears that Walker argues that Government Exhibit 2 is

8

duplicative of Government Exhibit 1 and therefore playing Government Exhibit 2 was cumulative and prejudicial. The Government argues that playing Government Exhibit 1 for the second time was not cumulative or prejudicial to warrant a new trial. The Government also contends that Walker waived his objection to the admissibility of Government Exhibit 2 as the parties stipulated to the introduction of the exhibit without objection at trial.

Evidence may be deemed needlessly cumulative "when it adds very little to the probative force of the other evidence in the case," such that its "contribution to the determination of truth would be outweighed by its contribution to the length of the trial." *United States v. West,* 53 F.4th 1104, 1108 (7th Cir. 2022) (internal citations omitted). To determine whether an exhibit is unfairly prejudicial, the Court uses a "sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *West,* 53 F.4th at 1108.

At trial, the Court overruled Walker' objection to the playing of Government Exhibit 1 during Agent Durkacz's testimony. The Court is not persuaded by Walker's argument that its ruling was in error. Playing Government Exhibit 1, a two minute and 10 second phone call, twice during a four-day trial did not unduly prejudice Walker. Nor is playing Government Exhibit 1 twice cumulative as the exhibit was important to identifying Walker as the individual on the phone call, which was made less than two hours before the deal. Government Exhibit 1 was highly probative of defendant's guilt based on the timing of the phone call to the transaction and the information on the phone call corroborated that Walker was involved in the transaction. The probative value is not outweighed by risk of prejudice. There was no risk of prejudice that the jury would believe that more than one drug deal occurred because the Government did not elicit testimony from Stewart regarding any prior dealings. There was no suggestion that more than one drug deal occurred and playing Government Exhibit 1 twice would not lead a reasonable jury to make such conclusion. There was no suggestion that Government Exhibit 1 was a separate drug transaction when it was

played for the second time at trial. As for Government Exhibit 2, the parties stipulated, without objection, to the introduction of Government Exhibit 2 at trial. As such, Walker waived any challenge to the admissibility of the exhibit. *United States v. Fluker,* 698 F.3d 988, 997-8 (7th Cir. 2012). Walker cannot now claim that Government Exhibit 2 was cumulative of Government Exhibit 1. The Court finds that it did not err in admitting Government Exhibit 1 and Government Exhibit 2.

### C. The Government's "Dangerous Gang Member" Statements During Closing Arguments

Lastly, Walker contends that he is entitled to a new trial because the Court erred in not striking from the record reference to Camphor's work with dangerous gang members during the Government's closing arguments. Walker argues that the Government's rebuttal closing argument implied that Walker is a dangerous gang member and that Camphor's safety was at risk on the date of the alleged drug deal. Walker contends that such statements are substantially more prejudicial than probative and, therefore, violated Federal Rule of Evidence 403 because there is no evidence that Walker was a dangerous gang member. The Government contends that the statements during rebuttal closing arguments did not deprive Walker of a fair trial because Camphor's statements were made in response to Walker's closing arguments about Camphor's demeanor, her credibility, and Officer Hayes's identification, as well as to explain why there was no photograph of Walker from the transaction. The Government argues that even if the Court were to find the statements improper, in considering the statements in light of the entire record, Walker was not deprived of a fair trial.

Walker argues that the following statements were improper and deprived him of a fair trial:

> And the people [Camphor] cooperated against, they were violent gang members. And she made a difficult decision to cooperate, including against Fredrick Stewart, who was a cousin of her former husband.

Feb. 15, 2024, AM Session, Tr. At 40:1-4.

10

> And you might question [Officer Hayes's] actions about, you know, why didn't he take a photograph when Lawrence Walker drove by him? But you heard, you heard testimony about that. These control buys, yes, they want to get evidence against their targets, but they also have to think about safety of the cooperating source. Janine Camphor was putting herself out there cooperating against violent gang members.

Feb. 15, 2024, AM Session, Tr. At 43:24-44:5.

Walker acknowledges that he only objected to the second statement, not the first. In determining prejudice, the Court must consider the following factors: (1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the remark; (4) whether the district court provided (and the efficacy of) a curative instruction; (5) whether the defendant had an opportunity to rebut the remark; and (6) the weight of the evidence against the defendant." *United States v. Myers,* 569 F.3d 794, 799 (7th Cir.2009) (internal quotations omitted).

The Court agrees with the Government: the statement did not prejudice Walker to deprive him of a fair trial. While Walker did not have an opportunity to rebut the remarks, the Government did not misstate evidence, the remarks did not implicate a specific right, and the remarks were made in response to Walker's closing argument which questioned Camphor and Officer Hayes's credibility and the lack of photographic evidence of Walker in the vehicle. In overruling Walker's objection to the second statement, the Court specifically noted, "[T]he jury has heard the evidence. And the jury needs to focus on the evidence they heard in reaching a decision." Feb. 15, 2024, AM Session, Tr. 7:11-13. The Court's jury instruction also provided that "[t]he lawyers' statements and arguments are not in evidence." Dkt. 134, at 5. Further, as previously discussed, there is substantial evidence that supported Walker's conviction. Additionally, the Government is allowed to comment on the credibility of a witness as long as the comment reflects reasonable inferences from the evidence adduced at trial rather than personal opinion. *United States v. Nunez,* 532 F.3d 645, 654 (7th Cir. 2008) (quotations omitted). Camphor testified about her role as a cooperator at trial, so such

comment was appropriate. Further, the remark cannot be considered gang affiliation evidence as the Government did not argue that Walker was a gang member during trial. Therefore, the jury is unlikely to infer that any remark about Camphor's cooperation against gang members was connected to Walker. The Court finds that this statement did not deprive Walker of a fair trial.

**CONCLUSION**

For these reasons, the Court denies Walker's post-trial motions [147].

**IT IS SO ORDERED.**

Date: 2/21/2025

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge